13 JAN 24 AM 10: 10

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

DEPUTY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STANLEY HOFFMAN, Individually, and on behalf of the Estate of PHYLLIS HOFFMAN,<br><br>Plaintiff,<br><br>vs.<br><br>AMERICAN SOCIETY FOR TECHNION-ISRAEL INSTITUTE OF TECHNOLOGY, INC.; et al.,<br><br>Defendants. | CASE NO. 09-CV-2482 BEN (KSC)<br><br>**ORDER:**<br><br>**(1) GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT RE: SEVERANCE BENEFITS** [Docket No. 61]<br><br>**(2) DENYING PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT RE: SEVERANCE BENEFITS** [Docket No. 60] |

Presently before the Court are Defendants' Motion for Partial Summary Judgment Re: Severance Benefits (Docket No. 61) and Plaintiff's Cross-Motion for Partial Summary Judgment Re: Severance Benefits (Docket No. 60). For the reasons stated below, Defendants' Motion for Partial Summary Judgment is **GRANTED** and Plaintiff's Cross-Motion for Partial Summary Judgment is **DENIED**.

## BACKGROUND

In 1991, Phyllis Hoffman, Plaintiff Stanley Hoffman's late wife, began to work for Defendant American Society for Technion-Israel Institute of Technology, Inc. ("ATS") as the Director of the San Diego Chapter. (Casino Decl., Exh. 7, at 33-34.) ATS sponsored, administered, and partially funded

- 1 -

09CV2482

the Employee Benefit Plan (the "Plan") providing full-time employees benefits for health, life, and disability and self-funded retirement and severance benefits. (*See id.*, Exh. 1.) ATS notified employees of these benefits through a document entitled Personnel Practices Code. (*See id.*)

In November 2007, Ms. Hoffman became seriously ill and required hospitalization. (*Id.*, Exh. 8, at 81.) From November 2007 to February 29, 2008, ATS continued to pay Ms. Hoffman her salary using her accumulated vacation and sick leave as well as helped her to apply for long-term disability benefits through ATS's Plan. (*Id.*, Exhs. 5, 6, 10.) On February 29, 2008, Ms. Hoffman left her full-time employment with ATS because of her health issues. (*Id.*, Exh. 11, at 87.) Ms. Hoffman began to receive long-term disability benefits through ATS's Plan on March 1, 2008. (*Id.*, Exh. 9, at 82-85.)

In March 2008, ATS asked Ms. Hoffman to assist them in transitioning to a new Director of the San Diego Chapter. ATS and Ms. Hoffman entered into an agreement in which ATS agreed to pay Ms. Hoffman 20% of her previous salary as well as her Cobra premiums in exchange for Ms. Hoffman providing ATS six hours per week to assist with the transition. (*Id.*, Exh. 3.) The agreement stated that "due to illness disability," Ms. Hoffman would be "unable to continue in [her] position as San Diego Chapter Director." (*Id.*)

In September 2008, Ms. Hoffman was diagnosed with terminal cancer and advised that she had three months to live. (*Id.*, Exh. 7, at 61-62.) In October or November 2008, Ms. Hoffman's attorney made demand for severance benefits under the Plan. (*Id.*, Exhs. 12, 13, at 96-97.) Her attorney was advised that ATS did not owe her severance benefits because she had "retired or voluntarily terminated" her employment. (*Id.*, Exh. 16, at 104-09.) Ms. Hoffman continued to work for ATS for several hours per week until December 31, 2008. (*Id.*, Exh. 3, Exh. 7, at 57-58.) On February 26, 2009, Ms. Hoffman died at the age of 67.

On November 5, 2009, Plaintiff filed suit individually and on behalf of the estate of Ms. Hoffman. (Docket No. 1.) The First Amended Complaint (the operative complaint) names ATS, Metropolitan Life Insurance Company, First Reliance Standard Life Insurance Company, and the

1 American Society for Technion-Israel Institute of Technology, Inc. Group Life Insurance Benefit Plan[1]
2 as defendants. (Docket No. 27.) The First Amended Complaint alleges four claims: (1) life insurance
3 benefits under 29 U.S.C. § 1132(a)(1)(B); (2) denial of severance benefits under 29 U.S.C.
4 § 1132(a)(1)(B); (3) life insurance benefits under 29 U.S.C. § 1132(a)(3) (equitable estoppel); and (4)
5 life insurance benefits under 29 U.S.C. § 1132(a)(3) (surcharge). (*Id.*) On August 21, 2012, the third
6 and fourth claims were dismissed. (Docket No. 55.)

7 Presently before the Court are Defendants ATS's and American Society for Technion-Israel
8 Institute of Technology, Inc. Group Life Insurance Benefit Plan's Motion for Partial Summary
9 Judgment Re: Severance Benefits and Plaintiff's Cross-Motion for Partial Summary Judgment Re:
10 Severance Benefits. Being fully briefed, the Court finds the Motions suitable for determination on the
11 papers without oral argument, pursuant to Civil Local Rule 7.1.d.1.

## LEGAL STANDARD

13 Summary judgment must be granted where the record shows "there is no genuine dispute as
14 to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a);
15 *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party must "persuade the
16 court that there is no genuine issue of material fact." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos.,*
17 *Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

18 This matter is governed by the Employee Retirement Income Security Act of 1974 ("ERISA")
19 as an employee benefit plan. Plaintiff's claim falls under 29 U.S.C. § 1132(a)(1)(B), which allows a
20 beneficiary to bring an action "to recover benefits due to him under the terms of his plan."

21 A denial of benefits challenged under § 1132(a)(1)(B) is reviewed by the court under a de novo
22 standard unless the benefit plan gives the administrator discretionary authority to determine eligibility
23 for benefits or to construe the terms of the plan. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101,
24 115 (1989). Under a de novo standard of review, courts "decide for themselves what a term of the
25 trust means instead of deciding whether the plan administrator was reasonable in how it construed the
26 term." *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1088 (9th Cir. 1999). Plaintiff argues that the

---

[1] The American Society for Technion-Israel Institute of Technology, Inc. Group Life Insurance Benefit Plan was erroneously named as the American Technion Society Employee Benefit Plan in the First Amended Complaint.

applicable standard of review is de novo, and Defendants do not dispute this. (Def. Opp. [Docket No. 74] at 2; Def. Mot. [Docket No. 61] at 4.) Accordingly, this Court will review the Plan Administrator's denial of benefits under a de novo standard of review.

When applying a de novo standard of review, courts first look to the "explicit language of the agreement to determine, if possible, the clear intent of the parties" when disputes regarding the interpretation of an ERISA plan arise. *Richardson v. Pension Plan of Bethlehem Steel Corp.*, 112 F.3d 982, 985 (9th Cir. 1997) (internal quotation marks omitted). "Terms in an ERISA plan should be interpreted in an ordinary and proper sense as would a person of average intelligence and experience." *Id.* However, "ambiguous contract terms are construed against the drafter." *Kerin v. U.S. Postal Serv.*, 116 F.3d 988, 992 (2d Cir. 1997). A term is ambiguous if it is susceptible to two or more reasonable meanings. *Kunin v. Benefit Trust Life Ins. Co.*, 910 F.2d 534, 539 (9th Cir. 1990). In addition, "[t]he intended meaning of even the most explicit language can, of course, only be understood in the light of the context that gave rise to its inclusion." *Richardson*, 112 F.3d at 985 (internal quotation marks omitted).

## DISCUSSION

Both Defendants' Motion for Partial Summary Judgment Re: Severance Benefits and Plaintiff's Cross-Motion for Partial Summary Judgment Re: Severance Benefits seek summary judgment on the second claim, which challenges the Plan Administrator's decision to deny Ms. Hoffman severance benefits under 29 U.S.C. § 1132(a)(1)(B). Whether Ms. Hoffman was eligible for severance benefits turns on whether Ms. Hoffman's decision to leave full-time employment was a "voluntary resignation."

The provision regarding severance benefits in the Personnel Practices Code reads:

> 14. TERMINATION OF EMPLOYMENT
> . . .
> D. An employee who shall have completed the probationary period [90 days], whose employment terminates for any reason other than malfeasance, retirement or *voluntary resignation* shall be entitled to the following severance pay, in addition to full pay up to the end of actual employment and payment for accrued, unused vacation days up to a maximum to 20 days:
- 4 -

> <u>Exempt Employees</u> — two weeks' salary for each full year employed, up to a maximum of 26 years of employment (52 weeks salary),
>
> <u>Non-Exempt Employees</u> — one week's salary for each full year employed, up to a maximum of 26 years of employment (26 weeks salary).
>
> Except for persons employed less than the probationary period, severance payment for partial years shall be prorated.

(Casino Decl., Exh. 1, at 7 (emphasis added).) As the Director of the San Diego Chapter, Ms. Hoffman was an exempt employee. (*Id.* at 3.)

Ms. Hoffman's decision to discontinue her employment because of her illness is a voluntary resignation. The Plan excludes severance benefits for "malfeasance, retirement or voluntary resignation." Each of these exclusions pertains to a specific act by the employee that results in the termination of the employment relationship. "Voluntary resignation," therefore, refers to an act by the employee that severs the employment relationship, without any affirmative action by the employer. Because Ms. Hoffman left her employment with ATS due to health issues and there is no evidence that ATS caused Ms. Hoffman to leave her employment, Ms. Hoffman's decision to sever her full-time employment relationship with ATS was a "voluntary resignation" within the common meaning of the term.

Plaintiff argues that Ms. Hoffman did not voluntarily resign as the Director of the San Diego Chapter because she left employment against her will, due to her illness. First, Plaintiff points to *Webster's Ninth New Collegiate Dictionary*, which defines "voluntary" as "proceeding from the will or from one's own choice or consent; done by design or intention." Although Ms. Hoffman may not have wished to leave her employment at ATS, she nonetheless voluntarily decided to terminate the employment relationship, without any affirmative action by ATS.

Second, Plaintiff argues that the Plan anticipates that an employee who leaves employment due to disability may also receive severance benefits. Plaintiff points to the provision of the Plan that states that disability benefits will be reduced by "any amounts that are paid under your Employer's sick leave, annual or personal leave, severance, or other salary continuation program (but not vacation pay) and any wages that are payable by your Employer." (Casino Decl., Exh. 21, at 143.) This provision,

however, does not establish that an employee who leaves employment due to a disability may receive severance benefits. In this context, severance may be paid due to the employer's termination of the employment relationship, rather than the employee's voluntary decision to terminate the employment relationship.

Accordingly, Ms. Hoffman's decision to leave full-time employment was a "voluntary resignation." Ms. Hoffman did not qualify for severance benefits under 29 U.S.C. § 1132(a)(1)(B). As this issue is dispositive, the parties' remaining arguments need not be addressed.

## CONCLUSION

For the reasons stated above, Defendants' Motion for Partial Summary Judgment Re: Severance Benefits is **GRANTED** and Plaintiff's Cross-Motion for Partial Summary Judgment Re: Severance Benefits is **DENIED**.

**IT IS SO ORDERED.**

DATED: January 23, 2013

HON. ROGER T. BENITEZ
United States District Judge