1

2 2013 FEB 12 PH 2:21

3 CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

4

5 BY _____ DEPUTY

6

7

8 # UNITED STATES DISTRICT COURT

9 ## SOUTHERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11 STANLEY HOFFMAN, individually, and on behalf of the Estate of PHYLLIS | CASE NO. 09-CV-2482 BEN (KSC) |
| 12 HOFFMAN, | **ORDER GRANTING IN PART FIRST RELIANCE STANDARD** |
| 13                                    Plaintiff, | **LIFE INSURANCE COMPANY'S MOTION FOR SUMMARY** |
| 14             vs. | **JUDGMENT** |
| 15 AMERICAN SOCIETY FOR TECHNION-ISRAEL INSTITUTE OF TECHNOLOGY, | [Docket No. 63] |
| 16 INC.; et al., | |
| 17                                   Defendants. | |

18

19      Presently before the Court is First Reliance Standard Life Insurance Company's Motion for

20 Summary Judgment. (Docket No. 63.) For the reasons stated below, the Motion is **GRANTED IN**

21 **PART**.

22 ### BACKGROUND

23      In 1991, Phyllis Hoffman, Plaintiff Stanley Hoffman's late wife, began to work for Defendant

24 American Society for Technion-Israel Institute of Technology, Inc. ("ATS") as the Director of the San

25 Diego Chapter. (Pomerantz Decl., Exh. B, at FRSL HOFF 98.) Effective December 31, 1992,

26 Defendant First Reliance Standard Life Insurance Company ("First Reliance") issued a Group Life

27 Insurance Policy to ATS (the "Policy"). (*Id.*, Exh. A, at FRSL HOFF1-22.) As a full-time employee,

28 Ms. Hoffman was eligible to participate in ATS's employee welfare benefit plan, which included the

1  group life insurance coverage insured by First Reliance. (*Id.*, Exh. A, at FRSL HOFF 1.)

2       On November 16, 2007, Ms. Hoffman stopped working for ATS on a full-time basis due to

3  illness. (*Id.*, Exh. C, at FRSL HOFF 277.)  In March 2008, ATS asked Ms. Hoffman to assist in the

4  transition to a new Director of the San Diego Chapter.  ATS and Ms. Hoffman entered into an

5  agreement in which ATS agreed to pay Ms. Hoffman 20% of her previous salary as well as her Cobra

6  premiums in exchange for Ms. Hoffman providing ATS six hours of work per week. (*Id.*, Exh. G, at

7  FRSL HOFF 122.)

8       On December 1, 2007, ATS terminated the Policy with First Reliance. (*Id.*, Exh. E, at FRSL

9  HOFF 234.)  Metropolitan Life Insurance Company became the new insurer of the ATS group life

10  insurance plan.

11       In September 2008, Ms. Hoffman was diagnosed with terminal cancer. (*Id.*, Exh. G, at FRSL

12  HOFF 122.)  On January 29, 2009, Ms. Hoffman applied to First Reliance for conversion to an

13  individual policy under the Conversion provision. (*Id.*, Exh. H, at FRSL HOFF 283-84.)  The

14  application was denied and Ms. Hoffman did not appeal the denial.  On February 26, 2009, Ms.

15  Hoffman passed away. (*Id.*, Exh. D, at FRSL HOFF 280.)

16       After Ms. Hoffman's death, a claim for life insurance benefits was made under the Policy.  On

17  December 14, 2011, First Reliance denied the claim for life insurance benefits because the claim was

18  untimely. (*Id.*, Exh. I, at FRSL HOFF 238-41.)  First Reliance explained that the Policy terminated

19  on December 1, 2007, and Ms. Hoffman exceeded the ninety-day deadline for conversion. (*Id.*, Exh.

20  I, at FRSL HOFF 239-40.)  Plaintiff appealed the claim denial on January 25, 2012. (*Id.*, Exh. J, at

21  FRSL HOFF 232-33.)  First Reliance issued an appeal decision on May 1, 2012, which upheld the

22  denial of the claim for life insurance benefits. (*Id.*, Exh. K, at FRSL HOFF 85-88.)

23       On November 5, 2009, Plaintiff filed suit individually and on behalf of the estate of Ms.

24  Hoffman.  (Docket No. 1.) The First Amended Complaint (the operative complaint) names ATS,

25  Metropolitan Life Insurance Company, First Reliance Standard Life Insurance Company, and the

26

27

28

1  American Society for Technion-Israel Institute of Technology, Inc. Group Life Insurance Benefit Plan[1]

2  as defendants. (Docket No. 27.) The First Amended Complaint alleges four claims: (1) life insurance

3  benefits under 29 U.S.C. § 1132(a)(1)(B); (2) denial of severance benefits under 29 U.S.C.

4  § 1132(a)(1)(B); (3) life insurance benefits under 29 U.S.C. § 1132(a)(3) (equitable estoppel); and (4)

5  life insurance benefits under 29 U.S.C. § 1132(a)(3) (surcharge). (*Id.*) On August 21, 2012, the third

6  and fourth claims were dismissed. (Docket No. 55.)

7  Presently before the Court is First Reliance's Motion for Summary Judgment. Being fully

8  briefed, the Court finds the Motion suitable for determination on the papers without oral argument,

9  pursuant to Civil Local Rule 7.1.d.1.

10  **LEGAL STANDARD**

11  Summary judgment must be granted where the record shows "there is no genuine dispute as

12  to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a);

13  *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party must "persuade the

14  court that there is no genuine issue of material fact." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos.,*

15  *Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

16  This matter is governed by the Employee Retirement Income Security Act of 1974 ("ERISA")

17  as an employee benefit plan. Plaintiff's claim falls under 29 U.S.C. § 1132(a)(1)(B), which allows a

18  beneficiary to bring an action "to recover benefits due to him under the terms of his plan."

19  A denial of benefits challenged under § 1132(a)(1)(B) is reviewed by the court under a de novo

20  standard unless the benefit plan gives the administrator discretionary authority to determine eligibility

21  for benefits or to construe the terms of the plan. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101,

22  115 (1989). Where the plan grants discretionary authority, the court's review of the fiduciary's

23  decision is for abuse of discretion. *Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 522 F.3d

24  863, 866 (9th Cir. 2008). Here, because the Plan includes an explicit grant of discretionary authority

25  (*see* Pomerantz Decl., Exh. A, at FRSL HOFF 20), the abuse of discretion standard applies.

26  Under the abuse of discretion standard, the court's inquiry "is not into whose interpretation of

27

28  [1] The American Society for Technion-Israel Institute of Technology, Inc. Group Life Insurance Benefit Plan was erroneously named as the American Technion Society Employee Benefit Plan in the First Amended Complaint.

1    plan documents is most persuasive, but whether the plan administrator's interpretation is
2    unreasonable."[2] *MacDonald v. Pan Am. World Airways, Inc.*, 859 F.2d 742, 744 (9th Cir. 1988). The
3    test for abuse of discretion is whether "[the court has been] left with a definite and firm conviction that
4    a mistake has been committed." *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 676
5    (9th Cir. 2011) (internal quotation marks omitted). To reach that conclusion, the court must conclude
6    that the administrator's decision was illogical, implausible, or without support in inferences that could
7    reasonably be drawn from the record. *Id.*

8          In situations where the defendant insurance company both evaluates eligibility and pays benefit
9    claims, a conflict of interest is presumed to exist. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 112
10   (2008). When such a conflict exists, a "reviewing court should consider that conflict as a factor in
11   determining whether the plan administrator has abused its discretion in denying benefits." *Id.* at 108.
12   The "significance of [this] factor will depend upon the circumstances of the particular case." *Id.* The
13   conflict of interest "should prove more important (perhaps of great importance) where circumstances
14   suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases
15   where an insurance company administrator has a history of biased claims administration." *Id.* at 117.

16         Plaintiff argues that "procedural irregularities" present here should weigh heavily in the Court's
17   evaluation of First Reliance's conflict of interest. (Opp. at 3.) Specifically, Plaintiff argues that
18   Defendants failed to provide Ms. Hoffman with the Policy or Certificate of Insurance, in violation of
19   29 U.S.C. § 1021(a) (plan administrator must provide plan participants with a Summary Plan
20   Description ("SPD")). However, the duty to provide plan documents belongs to the Plan
21   Administrator. 29 U.S.C. § 1021(a)(1). "Administrator" is defined as "the person specifically so
22   designated by the terms of the instrument under which the plan is operated." 29 U.S.C. § 1002(16)(A).
23   When no one is designated as the plan administrator, it is deemed to be the plan sponsor. *Id.* In this
24   case, the plan administrator is ATS, as Plaintiff recognizes. (*See* Opp. at 1.) Therefore, ATS, not First

25

26
27   [2] Plaintiff argues that there is a split of authority on whether the Court must defer to a reasonable interpretation of the Plan made by First Reliance. This issue, however, was resolved by the Supreme Court in *Conkright v. Frommert*, 130 S. Ct. 1640, 1651 (2010), which held that a plan
28   administrator's interpretation "will not be disturbed if reasonable."

1 | Reliance, had responsibility to provide Ms. Hoffman with the plan documents.

2 |      In addition, Plaintiff argues that First Reliance violated its own Policy by failing to give Ms.

3 | Hoffman the required notice of her right to convert the policy after its termination. First Reliance,

4 | however, was not Ms. Hoffman's employer. Moreover, there is no evidence that ATS notified First

5 | Reliance of Ms. Hoffman's situation. First Reliance, therefore, had no means of knowing that Ms.

6 | Hoffman stopped working full-time due to illness, which resulted in termination of her coverage.

7 |      Accordingly, no procedural irregularities are present here. Taking into consideration the

8 | circumstances of this case, First Reliance's conflict of interest does not weigh heavily in the Court's

9 | evaluation.

10 | **DISCUSSION**

11 | **I.   FIRST CLAIM FOR LIFE INSURANCE BENEFITS**

12 |      First Reliance's Motion seeks summary judgment on the first claim, which challenges First

13 | Reliance's denial of life insurance benefits under 29 U.S.C. § 1132(a)(1)(B).

14 |      According to the Policy, "Eligible Classes" consists of: "Each active, Full-time employee,

15 | except any person employed on a temporary or seasonal basis, according to the following

16 | classifications: Class 1: Employee[,] Class 2: Key Executive who has an 'Evergreen Agreement' with

17 | the Policyholder and whose name is on file with us." (Pomerantz Decl., Exh. A, at FRSL HOFF 9.)

18 | "Full-time" is defined as "working for [ATS] for a minimum for 30 hours during a person's regularly

19 | scheduled work week." (*Id.*, Exh. A, at FRSL HOFF 10.) As a full-time employee, Ms. Hoffman was

20 | eligible to participate.

21 |      In addition, the Policy states when an individual's insurance terminates:

22 |

23 | The insurance of an Insured will terminate on the first of the following to occur:<br>(1) *the date the Policy terminates*; or<br>(2) the date the Insured ceases to be in a class eligible for this insurance; or

24 | (3) the end of the period for which premium has been paid for the Insured; or<br>(4) the date the Insured enters military service (not including Reserve or National

25 | Guard).

26 |

27 | (*Id.*, Exh. A, at FRSL HOFF 13 (emphasis added).) Because ATS cancelled its group life insurance

28 | policy with First Reliance on December 1, 2007, Ms. Hoffman became ineligible for benefits on

- 5 -

1    December 1, 2007, at the latest.

2          Moreover, the Policy allows an individual to convert the group life insurance to an individual

3    life insurance policy when certain conditions are met:

> An Insured can use this privilege when his/her insurance is no longer in force. It has
> several parts. They are:
> A.    If the insurance ceases due to termination of employment or membership in
>       any of this Policy's classes, an individual Life Insurance Policy may be
>       issued. The Insured is entitled to a policy without disability or supplemental
>       benefits. A written application for the policy must be made by the Insured
>       *within thirty-one (31) days* after he/she terminates. The first premium must
>       also be paid within that time. . .
> G.    If an Insured is entitled to have an individual policy issued to him/her without
>       proof of health, then he/she must be given notice of this right within fifteen
>       (15) days before or after the termination or reduction of his/her insurance.
>       Such notice must be: (1) in writing; and (2) presented or mailed to the Insured
>       at his/her last known address by you or by us at the last known address
>       furnished to us by you. If the Insured is given notice more than fifteen (15)
>       days after termination or reduction but less than ninety (90) days, the Insured
>       will have an additional period within which to convert. This additional
>       period will end forty-five (45) days after the Insured is given notice.
>       However, *this period will not extend beyond ninety (90) days after the date
>       of termination or reduction of insurance*. This insurance will not be
>       continued beyond the period provided above.

15

16   (*Id.*, Exh. A, at FRSL HOFF 14 (emphasis added).)

17          According to the Policy, therefore, an individual whose group insurance terminates has 31 days

18   to submit a written application for a conversion policy. However, if the individual is given notice

19   more than 15 days after the termination, she has 45 days after the notice is given to convert. However,

20   the period to apply for conversion will not extend beyond 90 days after the termination of insurance.

21   The parties do not dispute that Ms. Hoffman did not apply for conversion within 31 days after her

22   individual coverage terminated, or within the additional 90 days permitted under limited

23   circumstances. Therefore, Ms. Hoffman was ineligible for a conversion policy.

24          First, Plaintiff argues that the only reasonable interpretation of the policy is that there is no time

25   limit to convert if the required notice is not given. According to Plaintiff, a contrary interpretation

26   would render the requirement to provide notice of the right to convert null and void. Here, Plaintiff

27   reasons, because there is no evidence that Ms. Hoffman received the required notice, there was no time

28   limit for her to convert. The Court disagrees. Because the Policy states that the "insurance will not

1  be continued beyond the period provided above [90 days]," it is reasonable to interpret this provision

2  as meaning that an employee has at most 90 days after the coverage terminates to apply for conversion,

3  whether or not notice is given. *See Sundstrom v. Sun Life Assurance Co. of Canada*, 683 F. Supp. 2d

4  594, 599 (W.D. Mich. 2010) (in case involving a similar policy, it was "irrelevant" that the plan

5  participant never received notice of the conversion right because no application was submitted prior

6  to the latest possible date).

7        Second, Plaintiff argues that the Personnel Practices Code doubles as a Plan document and the

8  SPD. According to Plaintiff, the Personnel Practices Code does not discuss the time limitations in

9  which to convert a policy or when an employee's life insurance policy will terminate, in violation of

10  29 U.S.C. § 1022(b) (SPD must contain a description of "circumstances which may result in

11  disqualification, ineligibility, or denial or loss of benefits"). The Personnel Practices Code, however,

12  is not a SPD in itself because it does not comply with 29 U.S.C. 1022(b) (listing twelve pieces of

13  information required to be contained in a SPD). In addition, the Personnel Practices Code cannot be

14  a plan document because it does not comply with 29 U.S.C. §§ 1102(a)(1), 1102(b) (setting out

15  required features of a welfare benefit plan). Rather, the Personnel Practices Code refers employees

16  to the "Certificate of Insurance which sets forth the terms and provisions of the policy." (Casino Decl.,

17  Exh. 1, at 8.) According to the Personnel Practices Code, the Certificate of Insurance was "given to

18  each employee when hired" and  a "Certificate of Insurance is also available in the ATS Personnel

19  office." (*Id.*) In addition, all of the required information for an ERISA plan document is included in

20  the Policy. Policies insuring ERISA benefit plans are plan documents whose unambiguous terms must

21  be enforced. *Babikian v. Paul Revere Life Ins. Co.*, 63 F.3d 837, 840 (9th Cir. 1995).

22        Third, Plaintiff argues that there is no evidence that Ms. Hoffman received the Certificate of

23  Insurance or Policy. As stated above, however, the Personnel Practices Code (which Plaintiff does not

24  dispute Ms. Hoffman possessed a copy of) states that the Certificate of Insurance was "given to each

25  employee when hired" and a "Certificate of Insurance is also available in the ATS Personnel office."

26  (Casino Decl., Exh. 1, at 8.) Moreover, the duty to provide plan documents belongs to ATS, not First

27  Reliance, as explained above. Finally, "participants have a duty to inform themselves of the details

28

1   provided in their plans." *Jordan v. Fed. Express Corp.*, 116 F.3d 1005, 1016 (3d Cir. 1997).  Even

2   if Ms. Hoffman did not have a copy of the Policy, she had time to request a copy and review the terms

3   before the time to convert ended.

4          Life insurance benefits are not due to Plaintiff under the terms of the Plan.  Therefore, First

5   Reliance's denial of the claim for benefits was not an abuse of discretion.

6   **II.     THIRD CLAIM FOR EQUITABLE ESTOPPEL AND FOURTH CLAIM FOR SURCHARGE**

7          First Reliance's Motion also seeks summary judgment on the third claim for life insurance

8   benefits under 29 U.S.C. § 1132(a)(3) (equitable estoppel) and the fourth claim for life insurance

9   benefits under 29 U.S.C. § 1132(a)(3) (surcharge).  The third and fourth claims were dismissed on

10  August 21, 2012. (Docket No. 55.) Accordingly, First Reliance's motion for summary judgment on

11  the third and fourth claims is **DENIED** as moot.

12                                    **CONCLUSION**

13         For the reasons stated above, First Reliance's Motion for Summary Judgment is **GRANTED**

14  **IN PART**.  First Reliance is **GRANTED** summary judgment on the first claim.  First Reliance's

15  Motion for Summary Judgment on the third and forth claims is **DENIED** as moot.

16  **IT IS SO ORDERED**.

17

18  DATED: February /2, 2013

19  HON. ROGER T. BENITEZ
    United States District Judge

20

21

22

23

24

25

26

27

28

- 8 -