FILED

13 FEB 21 PM 2:26

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STANLEY HOFFMAN, individually, and on behalf of the Estate of PHYLLIS HOFFMAN,<br><br>                           Plaintiff,<br>vs.<br><br>AMERICAN SOCIETY FOR TECHNION-ISRAEL INSTITUTE OF TECHNOLOGY, INC.; et al.,<br><br>                         Defendants. | CASE NO. 09-CV-2482 BEN (KSC)<br><br>**ORDER GRANTING METROPOLITAN LIFE INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT**<br><br>[Docket No. 66] |

       Presently before the Court is Metropolitan Life Insurance Company's Motion for Summary Judgment. (Docket No. 66.) For the reasons stated below, the Motion is **GRANTED**.

## BACKGROUND

       In 1991, Phyllis Hoffman, Plaintiff Stanley Hoffman's late wife, began to work for Defendant American Society for Technion-Israel Institute of Technology, Inc. ("ATS") as the Director of the San Diego Chapter. In and before 2007, ATS offered its full-time employees life insurance coverage through an employee welfare benefit plan administered by Defendant First Reliance Standard Life Insurance Company. During 2007, ATS decided to switch insurance carriers to Defendant Metropolitan Life Insurance Company ("MetLife"). On January 1, 2008, MetLife issued a group insurance policy to ATS to fund the ATS Basic Term Life Insurance & Accidental Death and

Dismemberment Insurance Plan (the "Plan"). The Plan is an ERISA-governed employee welfare benefit plan.

In September 2008, Ms. Hoffman was diagnosed with terminal cancer. Under the Plan, a life insurance premium waiver based on long-term disability is available to claimants with disabilities occurring before age 60. (Aceto Decl., Exh. A, at MET-HOF 6.) On November 26, 2008, Ms. Hoffman submitted a claim to MetLife for waiver of life insurance premiums based on total disability. (*Id.* at MET-HOF 7-11.) In connection with that claim, Ms. Hoffman submitted a check to MetLife from ATS in the amount of $717.30. (*Id.* at MET-HOF 19.) The check purportedly represented nine months worth of insurance premiums for Ms. Hoffman, beginning from the time ATS cancelled Ms. Hoffman's life insurance coverage on March 1, 2008. (*Id.*) On November 24, 2008, MetLife sent Ms. Hoffman a denial letter, stating that Ms. Hoffman was not eligible for a premium waiver because she was 67-years-old when she allegedly became totally disabled. (Aceto Decl., Exh. A, at MET-HOF 6.) In addition, MetLife sent Ms. Hoffman a letter through her attorney, Ms. Janet Sobel, dated December 30, 2008, which stated that Ms. Hoffman's premium waiver claim was denied due to the Plan's age limit provision. (*Id.* at MET-HOF 144.) The letter also stated that "[a]s discussed on December 30, 2008 you will not be pursuing an appeal at this time." (*Id.*) On February 26, 2009, Ms. Hoffman passed away.

On November 5, 2009, Plaintiff filed suit individually and on behalf of the estate of Ms. Hoffman. (Docket No. 1.) The First Amended Complaint (the operative complaint) names ATS, Metropolitan Life Insurance Company, First Reliance Standard Life Insurance Company, and the American Society for Technion-Israel Institute of Technology, Inc. Group Life Insurance Benefit Plan[1] as defendants. (Docket No. 27.) The First Amended Complaint alleges four claims: (1) life insurance benefits under 29 U.S.C. § 1132(a)(1)(B); (2) denial of severance benefits under 29 U.S.C. § 1132(a)(1)(B); (3) life insurance benefits under 29 U.S.C. § 1132(a)(3) (equitable estoppel); and (4) life insurance benefits under 29 U.S.C. § 1132(a)(3) (surcharge). (*Id.*) On August 21, 2012, the third and fourth claims were dismissed. (Docket No. 55.)

---

[1] The American Society for Technion-Israel Institute of Technology, Inc. Group Life Insurance Benefit Plan was erroneously named as the American Technion Society Employee Benefit Plan in the First Amended Complaint.

Presently before the Court is MetLife's Motion for Summary Judgment. Being fully briefed, the Court finds the Motion suitable for determination on the papers without oral argument, pursuant to Civil Local Rule 7.1.d.1.

## DISCUSSION

Summary judgment must be granted where the record shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party has the initial burden of demonstrating that summary judgment is proper. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). This burden may be discharged by demonstrating that there is an absence of evidence to support an element of the nonmoving party's case. *Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party to demonstrate the existence of specific facts showing that there is a genuine issue for trial. *Id.*

MetLife's Motion seeks summary judgment on the first claim, which challenges MetLife's denial of life insurance benefits under 29 U.S.C. § 1132(a)(1)(B).

"[A] claimant must avail himself or herself of a plan's own internal review procedures before bringing suit in federal court" for benefits under an ERISA governed claim. *Diaz v. United Agric. Emp. Welfare Benefit Plan & Trust*, 50 F.3d 1478, 1483 (9th Cir. 1995). "[T]he exhaustion doctrine is consistent with ERISA's background, structure and legislative history and serves several important policy considerations, including the reduction of frivolous litigation, the promotion of consistent treatment of claims, the provision of a nonadversarial method of claim settlement, the minimization of costs of claims settlement and a proper reliance on administrative expertise." *Id.* at 1483; *see also Amato v. Bernard*, 618 F.2d 559, 568 (9th Cir. 1980) ("[A] primary reason for the exhaustion requirement . . . is that prior fully considered actions by pension plan trustees interpreting their plans and perhaps also further refining and defining the problem in given cases, may well assist the courts when they are called upon to resolve the controversies."). Federal courts "have the authority to enforce the exhaustion [of a benefit plan's administrative procedures and remedies] requirement in suits under ERISA, and . . . as a matter of sound public policy they should usually do so." *Amato*, 618 F.2d at 568.

Here, the plan documents for the Plan lay out the process by which a claimant can pursue a claim for benefits, in a section entitled "FILING A CLAIM":

> **When a claimant files a claim for insurance benefits** described in this certificate, he should send Us both the notice of claim and the required Proof within 90 days of the date of a loss.
>
> Notice of claim and Proof may also be given to Us by following the steps set forth below:
>
> **Step 1**
> A claimant may give Us notice by calling Us at the toll free number shown in the Certificate Face Page within 20 days of the date of a loss.
>
> **Step 2**
> We will send a claim form to the claimant and explain how to complete it. The claimant should receive the claim form within 15 days of giving Us notice of claim.
>
> **Step 3**
> When the claimant receives the claim form, he should fill it out as instructed and return it with the required Proof described in the claim form.
>
> If the claimant does not receive a claim form within 15 days after giving Us notice of claim, he may send Us Proof using any form sufficient to provide Us with the required Proof.
>
> **Step 4**
> The claimant must give Us Proof not later than 90 days after the date of the loss.
>
> If notice of claim or Proof is not given within the time limits described in this section, the delay will not cause a claim to be denied or reduced if such notice and Proof are given as soon as is reasonably possible.

(Aceto Decl., Exh. A, at MET-HOF 187.) In addition, MetLife has an obligation to review the claim upon receiving notice and proof of loss. (*Id.* ("When we receive the claim form and Proof We will review the claim and, if We approve it, We will pay benefits subject to the terms and provisions of this certificate and the Group Policy.").)

There is no evidence that Plaintiff exhausted his administrative remedies. The Administrative Record does not contain a claim submission for life insurance benefits under the MetLife Plan, nor any communication from Plaintiff or his attorneys that could be construed as a claim submission. In addition, Plaintiff's Initial Disclosures and Supplemental Disclosures do not contain a purported copy

of a claim submission to MetLife for life insurance benefits. Moreover, Plaintiff did not submit a claim to MetLife for life insurance benefits even after MetLife asserted failure to exhaust administrative remedies as an affirmative defense in its Answer to the First Amended Complaint. Plaintiff never submitted any documents detailing the circumstances of Ms. Hoffman's death, and therefore never provided MetLife with the opportunity to review the claim for life insurance benefits. (O'Dell Decl. ¶ 2.)

The only claim submitted under the Plan was Ms. Hoffman's November 2008 request for a life insurance premium waiver. (Aceto Decl., Exh. A, at MET-HOF 1-103.) The November 24, 2008 letter from MetLife informing Ms. Hoffman that she was not eligible for a premium waiver did not address Ms. Hoffman's overall eligibility for life insurance coverage under the MetLife Plan. (*Id.* at MET-HOF 6.) Accordingly, Plaintiff has failed to show that he has exhausted his administrative remedies.

First, Plaintiff argues that he is deemed to have exhausted his administrative remedies because filing a formal proof of loss claim would have been futile. According to Plaintiff, MetLife never responded to Ms. Hoffman's request to convert coverage to an individual life insurance policy. Plaintiff, however, erroneously assumes that he could not submit a life insurance benefit claim because MetLife had not made a determination on the conversion request. According to the Plan language, an application to convert to an individual life insurance policy must be submitted during the Application Period as defined in the Plan: "If You die during the Application Period, Proof of Your death must be sent to Us. When we receive such Proof with the claim, We will review the claim and if We approve it will pay the Beneficiary the amount of Life Insurance to which You were entitled to convert." (*Id.* at MET-HOF 176.) Therefore, when a decedent dies while a conversion request is pending, the Plan directs the beneficiary to submit a claim for life insurance benefits. (*Id.*) Despite this, Plaintiff has failed to submit a claim for life insurance benefits to MetLife. Although MetLife asserted Plaintiff's failure to exhaust administrative remedies as a defense from the outset of the litigation, Plaintiff has still not submitted a claim to MetLife.

Second, Plaintiff argues that his counsel's request to reinstate or convert the life insurance

policy as well as the present lawsuit constitutes a claim for life benefits under the Policy. As for the request to reinstate or convert the life insurance policy, the Administrative Record does not show that Ms. Hoffman complied with the Plan's requirements for submitting a conversion request or that Plaintiff submitted a life insurance benefit claim in connection with the conversion request following Ms. Hoffman's death. The Administrative Record shows that Ms. Hoffman submitted her request for reinstatement and ATS's check for 9 months worth of premiums as part of her claim for premium waiver, MetLife denied Ms. Hoffman's premium waiver claim, and Ms. Sobel confirmed that Ms. Hoffman would not be pursuing an administrative appeal of the denial determination. (*Id.* at MET-HOF 144.)[2] This shows only that Ms. Sobel communicated with a life insurance premium wavier claims examiner regarding possible conversion of group coverage to an individual life insurance policy.

As for the filing of the present lawsuit, the Plan documents contain instructions for submitting a life insurance benefit claim, which do not include filing a lawsuit. (*Id.* at MET-HOF187.) The Plan requires that a claimant send MetLife written notice of the claim and proof of loss or provide notice through a specified, toll-free telephone number. (*Id.*) Plaintiff never submitted the required proof of loss to MetLife. In addition, by Plaintiff's reasoning, a claimant would be able to side-step ERISA's administrative review process by filing a lawsuit and treating it as a claim submission. Under ERISA, a claimant must exhaust his administrative remedies before filing suit in court. *Diaz*, 50 F.3d at 1483 ("[A] claimant must avail himself or herself of a plan's own internal review procedures before bringing suit in federal court."). Plaintiff's theory would violate ERISA's policy goal of expedience because it would equate a lawsuit with a claim for benefits and allow claimants to seek relief directly in the courts.

Third, Plaintiff argues that under California's "notice-prejudice" rule, MetLife's 90-day limit to submit a claim is unenforceable unless the insurer can prove prejudice. California's "notice-prejudice" rule provides that "[a] defense based on an insured's failure to give timely notice [of a

---

[2] MetLife's evidentiary objections to the declarations of Barbara Casino and Janet Sobel (Docket Nos. 92-1, 92-2) are **OVERRULED** as moot.

claim] requires the insurer to prove that it suffered substantial prejudice." *UNUM Life Ins. Co. of Am. v. Ward*, 526 U.S. 358, 366 (1999) (internal quotation marks omitted). MetLife, however, has not asserted that the Plan's 90-day proof of loss provision precludes Hoffman from making a life insurance benefit claim. The Plan states: "If notice of claim or Proof is not given within the time limits described in this section, the delay will not cause a claim to be denied or reduced if such notice and Proof are given as soon as is reasonably possible." (Aceto Decl., Exh. A, at MET-HOF 187.) MetLife is not arguing that granting its summary judgment motion would preclude Hoffman from pursuing his administrative remedies. Any late claim would be governed by California's "notice-prejudice" rule.

Accordingly, because Plaintiff has failed to show that he has exhausted his administrative remedies, summary judgment is granted in favor of MetLife on Plaintiff's first claim. *See, e.g., Noren v. Jefferson Pilot Fin. Ins. Co.*, 378 Fed. App'x 696, 697-98 (9th Cir. 2010) (holding that summary judgment is proper when claimant fails to exhaust administrative remedies).

## CONCLUSION

For the reasons stated above, MetLife's Motion for Summary Judgment is **GRANTED**. Summary judgment is granted in favor of MetLife on Plaintiff's first claim.

**IT IS SO ORDERED.**

DATED: February 21, 2013

HON. ROGER T. BENITEZ
United States District Judge